UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:07-cv-111-RJC

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| MAHA PRABHU, INC. d/b/a SUBWAY, | )<br>) |
| Defendant. | )<br>)<br>) |

**THIS MATTER** is before the Court on the motion of Defendant Maha Prabhu for partial summary judgment on punitive damages (Doc. No. 40), with supporting memorandum and attachments (Doc. No. 43), Plaintiff Equal Employment Opportunity Commission's response with attachments (Doc. No. 48), Defendant's reply to response to motion for summary judgment (Doc. No. 56), and Plaintiff's surreply to motion for summary judgment (Doc. No. 65). For the reasons stated below, the Court **GRANTS** Defendant's motion for partial summary judgment on punitive damages.

**I.  INTRODUCTION**

Defendant Maha Prabhu operates five Subway franchise locations in the Charlotte, North Carolina area. Kamlesh Shah and his wife are equal shareholders of Defendant. (Shah Aff. at 2). In October 2005, Carmen Sullivan applied for employment with Defendant as a "sandwich artist/cashier" at its Tyvola Road restaurant. After filling out the application, Cynthia Nivens, who was the manager of the Tyvola Road Subway, told Sullivan to expect a call setting up an interview.

(Nivens Dep. at 26).[1] After Nivens contacted Rhonda McGriff, the general manager of Defendant's Subway stores, McGriff told Nivens to set up an interview. (Id.). During the interview, Sullivan disclosed to Nivens that she has Lupus[2] and may be unable to work on certain days.

After the interview, Nivens called McGriff to provide her with feedback about Sullivan's interview. Nivens told McGriff that the interview went well and that Sullivan had Lupus. McGriff told Nivens that they could not hire Sullivan because of her illness. (Nivens Dep. at 27). McGriff told Nivens to call Sullivan and tell her that Defendant could not hire her because of her "situation." (Id.). McGriff said Defendant could not hire Sullivan because she could not be around the food and she might have an outbreak and have to go to the hospital. (Id. at 26-27, 49-51). McGriff also told Keisha McKinley that she did not think it was a good idea to hire Sullivan because she might have an episode and hurt herself or someone else. (McKinley Dep. at 8-9). Pursuant to McGriff's instructions, Nivens called Sullivan and told her that Defendant could not hire her because of her illness. (Nivens Dep. at 57).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

---

[1] The page references to depositions refer to the original transcript page number rather than the page number assigned by the ECF docketing system.

[2] Lupus is an autoimmune disease in which a person's immune system attacks healthy cells and tissues. Lupus can affect many parts of the body, including the joints, skin, kidneys, heart, lungs, blood vessels, and brain. Although people with the disease may have many different symptoms, some of the most common ones include extreme fatigue, painful or swollen joints (arthritis), unexplained fever, skin rashes, and kidney problems. The cause of lupus is unknown. Nat'l Institutes of Health, "What Is Lupus? Fast Facts: An Easy-to-Read Series of Publications for the Public," Sept. 2005, available at http://www.niams.nih.gov/hi/topics/lupus/FF_Lupus.pdf.

2

P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. Evidence that is not supported is insufficient to defeat a motion for summary judgment. Id. at 323-24. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. However, "a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

### III. DISCUSSION

Defendant asserts that summary judgment should be granted to Defendant on Plaintiff's claim for punitive damages. To recover punitive damages under the Americans with Disabilities Act of 1990 ("ADA"), Plaintiff must show both that Defendant engaged in a discriminatory fashion and that it acted with malice or reckless indifference to the federally protected rights of an aggrieved

3

individual. 42 U.S.C. § 1981a(b)(1). Punitive damages are available "in only a subset of cases involving intentional discrimination." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999). Section 1981a(b)(1) "requires plaintiffs to make an additional 'demonstration' of their eligibility for punitive damages. Congress plainly sought to impose two standards of liability – one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award." Id.

"The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. at 535. The Kolstad Court recognized that the statutory requirement of malice or reckless indifference may be proven in the alternative. As a result, proof of "actual malice" is unnecessary for a finding of punitive damages liability if, at a minimum, the plaintiff is able to prove "recklessness in its subjective form." Id. at 536. The Kolstad Court described recklessness as "callous indifference" or "subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." Id.

For a punitive damages award to be justified on the basis of reckless indifference, the plaintiff must show that (1) "the employer's decision-maker discriminated in the face of a perceived risk that the decision would violate federal law;" (2) the "decision maker was a principal or served the employer in a managerial capacity;" (3) that the "decision maker acted within the scope of his employment in making the challenged decision;" and (4) that the "employer failed to engage in good-faith efforts to comply with the law." EEOC v. Fed. Express Corp., 513 F.3d at 372.

For reasons discussed below, the plaintiff cannot meet the first prong. To prevail, it must show that the defendant decision-maker not only intentionally discriminated but that she did so with

4

"a positive element of conscious wrongdoing." Kolstad, 527 U.S. at 538 (internal quotation marks omitted). This is so because the justification for an additional punitive damage award is to sanction the "evil intent of the defendant." Id. (internal quotation marks omitted).

Regarding intentional discrimination, McGriff denies that she said anything to Nivens regarding Sullivan's Lupus. (McGriff Dep. at 52; McGriff Aff. ¶ 9). McGriff further denies that she told Nivens that Defendant could not hire Sullivan because of her Lupus. (Id.). Nivens, however, asserts that McGriff said Defendant could not hire Sullivan because of her illness and because Defendant could not have her around the food. (Nivens Dep. at 42, 49-52, 68). Zarcaro Garrett, a sandwich artist, stated that she was present when Nivens told McGriff about Sullivan's Lupus. (Zarcaro Dep. at 16). Zarcaro heard McGriff say that Defendant could not hire Sullivan because of her Lupus. (Id.). Additionally, Keisha McKinley recalls a conversation with McGriff where McGriff told her that McGriff did not think it was a good idea to hire Sullivan because Sullivan might have an episode and hurt herself or someone else. (McKinley Dep. at 8-9). A reasonable jury examining the conflicting testimony may determine that Defendant intentionally discriminated against Sullivan because of her Lupus.

The evidence viewed in the light most favorable to Plaintiff and giving her the benefit of all reasonable inferences, is, however, insufficient for a reasonable jury to conclude that the intentional discrimination was committed maliciously or with reckless indifference to the federally protected rights of the plaintiff, i.e., that McGriff intentionally discriminated in the face of a consciously perceived risk that her decision would violate federal law. See Kolstad, 527 U.S. at 536. Plaintiff has provided no evidence establishing the requisite conscious wrongdoing that is required by Kolstad. But see Anderson v. G.D.C., Inc., 281 F.3d 452, 460 (4th Cir. 2002) (concluding that

evidence supported conclusion that harassing supervisor was recklessly indifferent to plaintiff's rights, even though he denied having read the poster, because "a reasonable jury could conclude that the rank offensiveness of [supervisor's] conduct demonstrates a deliberate disregard for [plaintiff's] rights."); Delph v. Dr. Pepper Bottling Co. of Paragould, 130 F.3d 349, 358 (8th Cir. 1997) (concluding that evidence supported conclusion that harassing supervisors were recklessly indifferent to plaintiff's rights, even though they had no training on workplace discrimination, because "one simply does not refer to black employees as did [plaintiff's] two supervisors without knowing that such language would offend a reasonable person in [plaintiff's] position"). The most Plaintiff submits is evidence of McGriff's ignorance about what Lupus is and what the ADA requires in hiring decisions. (See McGriff Aff. at 3; McGriff Dep. at 52). McGriff never saw Sullivan, and Nivens never told McGriff that Sullivan had scars on her face. (Nivens Dep. at 50). Even assuming that Nivens' version of events is accurate, neither Nivens' testimony nor other evidence shows that McGriff acted with actual understanding that she could be violating federal law. While there is evidence that McGriff knew that discriminating against someone with a disability or a perceived disability violates federal law, there is no indication that McGriff knew what Lupus was nor that by having Lupus, Sullivan could be disabled under the ADA. (McGriff Dep. at 91, 52). Thus, there is no evidence that McGriff subjectively knew that her decision not to hire Sullivan violated her federally protected rights. Indeed, she was only "somewhat" familiar with the ADA, mostly as it pertained to public accommodation. (Id. at 90-91). She had no training, did not know what Title VII of the Civil Rights Act was, and did not connect the dots in terms of associating Lupus with a disability. (Id. at 91).

Therefore, the Court finds no genuine issue of material fact on the issue of Defendant's

reckless indifference. It is entitled to summary judgment on Plaintiff's claim for punitive damages..

IV.     **CONCLUSION**

Accordingly, Defendant's motion for summary judgment is **GRANTED**.

Signed: July 18, 2008

Robert J. Conrad, Jr.
Chief United States District Judge